Avenell et al., Appellants, *v.* Westinghouse Electric Corp., Appellee.

(No. 33441—Decided September 12, 1974.)

*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis* and *Mr. Marvin L. Karp*, for appellants.
*Messrs. Jones, Day, Cockley & Reavis* and *Mr. Ellis H. McKay*, for appellee.

JACKSON, J. Defendant, Westinghouse Electric Corporation, manufactured and sold a turbine generator to Toledo Edison Company. The turbine generator was delivered to Toledo Edison Company and installed at its Bay Shore power generating station near Toledo in May of 1968.

On August 10, 1971, plaintiffs appellants, as assignees and subrogees of Toledo Edison Company, filed suit in the Common Pleas Court of Cuyahoga County for $185,000 consequential damages allegedly resulting from a failure and breakage of turbine blades of the generator man-

ufactured and sold to Toledo Edison by Westinghouse Corporation. Westinghouse replaced the broken turbine blades, but plaintiffs demanded judgment for consequential damages alleging: (1) additional costs to maintain output of electricity at or near normal; (2) loss of demand charges for short term energy to other utility companies; and (3) loss of sales to other utilities under contract.

The parties agree that plaintiffs' complaint asserted three theories of recovery to-wit: breach of implied warranties, negligence, and implied warranty in tort.

The trial court granted a motion by Westinghouse for summary judgment.[1] Plaintiffs appeal and contend that the order granting summary judgment was erroneous.

For purposes of this appeal, the material facts are not in dispute. Consequently, the issue presented is whether defendant Westinghouse was entitled to judgment as a matter of law on all theories of recovery asserted in plaintiffs' petition except the theory of negligence which the plaintiffs have apparently abandoned.[2]

For the reasons set out below, we hold that plaintiffs may not prevail on theories of implied warranty in tort or implied warranty under the Uniform Commercial Code, and therefore, affirm the judgment of the trial court.

## I.

The essential basis of defendant's motion for summary judgment as to the claim based on implied warranty under the Uniform Commercial Code is that the provisions of the contract of sale between defendant and Toledo Edison expressly exclude implied warranty claims. The pertinent provisions of the contract provide as follows:

"1. WARRANTY—The Corporation [Westinghouse] warrants that the equipment delivered by it will be of the kind and quality described in the order or contract and will be free of defects in workmanship or material. Should any

---

[1]The motion was granted on the briefs without a hearing, and findings of fact and conclusions of law were not requested. The record, therefore, fails to disclose the basis for the decision of the trial court.

[2]In their appellate brief, plaintiffs appellants argue only that they are entitled to recover under theories of strict tort (implied warranty in tort), or implied warranty under the Uniform Commercial Code.

failure to conform to this warranty appear within one year ... the Corporation [Westinghouse] shall upon notification correct such non-conformity, including non-conformance with the specifications, at its option, either by repairing any defective part or parts, or by making available f. o. b. the Corporation's plant, a repaired or replacement part. . . .

"This Warranty is in lieu of all warranties of merchantability, fitness for purpose, or other warranties, express or implied, except of title and against patent infringement. Correction of non-conformities, in the manner and for the period of time provided above, shall constitute fulfillment of all liabilities of the Corporation [Westinghouse] to the Purchaser [Toledo Edison], whether based on contract, negligence or otherwise with respect to, or arising out of such equipment.

"2. LIMITATION OF LIABILITY—Neither party shall be liable for special, indirect, or consequential damages. The remedies of the Purchaser [Toledo Edison] set forth herein are exclusive, and the liability of the Corporation [Westinghouse] with respect to any contract or sale or anything done in connection therewith, whether in contract, in tort, under any warranty, or otherwise, shall not, except as expressly provided herein, exceed the price of the equipment or part on which such liability is based."

The contract, by its terms, therefore, bars recovery on the implied warranty claim for three reasons:

(1) As authorized by U. C. C. Sec. 2-316(2) (R. C. 1302.29 (B)),[a] the contract expressly excluded implied warranty claims, including specifically warranties of merchantability and fitness for a particular purpose.

(2) As authorized by U. C. C. Sec. 2-316(4)(R. C. 1302.29(D)), the contract expressly limited the remedy for breach of warranty to repair or replacement of non-conforming parts.

(3) As authorized by U. C. C. Sec. 2-719(3) (R. C.

---

[a]The parties agree that either Ohio or Pennsylvania law is applicable, and that there is no significant difference in the application of the law in the two jurisdictions. Neither party has given notice of an intention to rely on Pennsylvania law, and this decision is, therefore, confined to the relevant Ohio law. See Civil Rule 44.1(A)(3).

1302.93(C)), the contract expressly excluded liability for consequential damages.

Plaintiffs contend that these disclaimers and limitations contained in the contract are legally ineffective because the disclaimer-limitation provisions were not "conspicuous" as required by U. C. C. Sec. 2-316(2) (R. C. 1302.-29(B)), set out below:

"(B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

The Uniform Commercial Code further defines the term "conspicuous" as follows:

" 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court." U. C. C. 1-201(10) ; R. C. 1301.01(J).

In granting summary judgment for the defendant the trial court necessarily determined that the language in question was "conspicuous." Such a judgment by the trial court involving essentially factual determinations, should not be reversed on appeal unless clearly arbitrary and unreasonable. Under the circumstances of the case at bar, where (1) the limiting language is located on the first page of the contractual document titled "General Conditions"; (2) all of the type indicating the contractual conditions is large and readable (there is no fine print) ; (3) the limiting language is simple, direct, and easily understood; (4) there is a printed heading in capital letters which reads: "LIMITATION OF LIABILITY"; (5) the "person" against

whom the limiting language is to operate is a prominent, sophisticated entity; the trial court was justified in finding that the language excluding the implied warranties of merchantability and fitness for a purpose was conspicuous as required pursuant to R. C. 1302.29(B).

Defendant Westinghouse argues that, even if the language which disclaims implied warranties was determined not to be "conspicuous," plaintiffs are barred from recovering consequential damages by the contractual provision limiting plaintiffs' remedies to repair or replacement of defective parts. U. C. C., Sec. 2-719 (R. C. 1302.93 (A)(1)) specifically permits the parties to limit the buyer's remedies to repair or replacement. Unlike the Uniform Commercial Code provisions governing the disclaimer of warranties (U. C. C., Sec. 2-316), there is no express provision in the Uniform Commercial Code requiring that a contractual clause limiting remedies be "conspicuous." Consequently, Westinghouse argues that the limitation of remedies clause of the contract is binding even if not printed in conspicuous language.

This argument has been rejected by learned commentators on the Uniform Commercial Code. *See e. g.,* the following analysis from Nordstrom, *Law of Sales* (1970), at 376:

"Section 2-719 allows parties to increase or decrease available remedies providing three conditions are met. These are: (1) the variation in remedies must be contained in the parties' agreement; (2) an exclusive or limited remedy must not have failed 'of its essential purpose'; and (3) an attempt to limit or exclude consequential damages must not be unconscionable.

"The requirement that the agreement contain the alteration of basic Code remedies brings into play those ideas discussed in the prior section of this text [dealing with disclaimers of implied warranties]. The limitation must be a part of the parties' bargain in fact. If it is contained in a printed clause which was not conspicuous or brought to the buyer's attention, the seller had no reasonable expectation that the buyer understood that his remedies were being restricted to repair and replacement. As

such, the clause cannot be said to be a part of the bargain (or agreement) of the parties.''

We concur with this reasoning and hold that to be effective, a clause limiting remedies pursuant to U. C. C., Sec. 2-719 (R. C. 1302.29(D)) ''must be by a writing and conspicuous.''

However, since we have concluded, *supra*, that the language limiting remedies is sufficiently conspicuous to bind the buyer, we necessarily hold that as a matter of law plaintiffs may not recover under claims based upon implied warranties of merchantability, and/or fitness for a purpose.

## II.

The plaintiff in a product liability case may bring an action in tort based upon the theory of implied warranty. *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227; *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244; *Ingliss* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132. The right to bring such an action does not depend upon the existence of a contractual relationship between the plaintiff and the defendant. *Lonzrick* v. *Republic Steel, supra.* Since, therefore, implied warranty in tort is not a matter of contract, the contractual provisions disclaiming implied warranties and limiting liability to repair or replacement do not affect plaintiffs' claim based upon implied warranty in tort.[4]

Westinghouse concedes that the contractual disclaimers and limitations of liability do not bar plaintiffs' action based upon implied warranty in tort. Nevertheless, defendant Westinghouse contends that summary judgment was properly granted. For the reasons hereinafter detailed we agree with this contention.

The doctrine of strict liability in tort[5] was first used

---

[4]Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791 at 832 (1966).

[5]The term "strict liability in tort" used in the Restatement of Torts 2d and "implied warranty in tort" used in Ohio are essentially interchangeable. *See, e. g.,* Note, *Product Liability: A Synopsis,* 30 Ohio State L. J. 551 (1967).

as the basis of a judicial decision in *Greenman* v. *Yuba Power Prods., Inc.* (1962), 59 Cal. 2d 57, 377 P. 2d 897. In this case, the Supreme Court of California noted that the purpose of imposing strict liability on a manufacturer is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. The court further noted in *Greenman* v. *Yuba Power Products, supra,* that the law of sales warranties, developed to meet the needs of a commercial setting, gave inadequate protection to injured consumers.

Ohio courts have also recognized that traditional sales warranties with their requirement of privity of contract, give inadequate protection to injured persons who are not in privity with the manufacturer of a defective product which has caused them injury. Thus, in *Lonzrick* v. *Republic Steel Corp., supra,* the Supreme Court of Ohio held that the plaintiff in a products liability case could bring an action based upon implied warranty in tort. Such an action exists, of course, independent of contractual notions, such as privity.

Although the rules of contractual sales warranties, now governed by Article 2 of the Uniform Commercial Code,[6] give inadequate legal recourse to consumers in certain situations, none other than Dean Prosser himself has recognized that these rules function well in a commercial setting. Prosser, *The Assault upon the Citadel,* 69 Yale L. J. 1099, 1126.

Therefore, both the common law of implied warranty in tort and the Uniform Commercial Code warranty provisions have a place in the law of products liability.

Application of the doctrine of implied warranty in tort to all products liability cases would render useless many, if not all, of the Uniform Commercial Code provisions involving products liability. For example, as noted above, whenever the doctrine of implied warranty in tort is appli-

---

[6]R. C. Chapter 1302.

cable, the provisions of the Uniform Commercial Code permitting the parties to contractually modify or exclude warranties, and to modify or limit remedies are of no avail. Stated another way, where implied warranty in tort applies, the parties are not free to determine by contract the quality of goods which the seller is bound to deliver or the remedies available to the buyer in the event that the goods do not measure up to the agreed quality. It is clear, then, that the doctrine of implied warranty in tort must be limited in its applicability. Otherwise, unlimited application of the doctrine would emasculate the Uniform Commercial Code provisions dealing with products liability.

The parties have extensively briefed the question of whether the doctrine of implied warranty in tort is applicable to the case at bar. No binding authority from this jurisdiction has been cited,[7] however, and we have discovered none.

The purpose of the doctrine of implied warranty in tort—to insure that the costs of injuries resulting from defective products are borne by the manufacturers, rather than the injured person powerless to protect himself—would not be served by permitting the plaintiffs herein to rely upon the theory of implied warranty in tort.

First, Toledo Edison Company, purchaser of the turbine generator, dealt at arm's length with the seller, defendant Westinghouse, and was free to negotiate the terms of the contract for sale. Implied warranty in tort is ordinarily applied where the purchaser *is not* in privity with the seller. Second, plaintiffs seek purely consequential damages in contrast to damages for injury to persons or prop-

---

[7]Plaintiffs cite the following cases for the proposition that Ohio law permits the application of implied warranty in tort to the facts of the case at bar: *United States Fidelity and Guaranty Co.* v. *Truck and Concrete Equipment Co.* (1970), 21 Ohio St. 2d 244; *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227; *Ingliss* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132; *Mahalsky* v. *The Salem Tool Co.* (6th Cir. 1972), 65 Ohio Op. 2d 39. A careful reading of these cases reveals that none of them goes as far as the plaintiffs claim in applying the doctrine of implied warranty in tort.

erty.[8] Third, the turbine generator is not an ordinary consumer product, but a specialized piece of equipment, familiar to both buyer and seller. The following quotation from *Southwest Forest Industries, Inc.*, v. *Westinghouse Electric Corp.* (9th Cir. 1970), 422 F. 2d 1013, 1020, is therefore also applicable to the case at bar:

"[T]he principles underlying the doctrine of strict liability in tort for defective products were not applicable. All damages sought by Southwest in this case are consequential damages. The turbine generator is a highly specialized, custom-built piece of machinery, built to particular specifications and tested in the factory before delivery, under supervision of engineers representing both parties.

"The circumstances of this case do not bring the plaintiff within that class of consumers, type of transaction, or damages suffered that created the need for relief based on strict liability in tort. Neither the philosophy nor the theory of the doctrine of strict liability in tort nor the actual holdings of the cases involved support an extension of the doctrine of strict liability in tort to the present facts."

In summary, the doctrine of implied warranty in tort is not available to the plaintiffs appellants.

Having concluded that plaintiffs may not prevail under either the theory of implied warranty under the Uniform Commercial Code or the theory of implied warranty in tort, we affirm the order of the trial court granting summary judgment for defendant appellee.

*Judgment affirmed.*

SILBERT, C. J., and DAY, J., concur.

---

[8]The weight of authority from other jurisdictions is to the effect that consequential damages *may not* be recovered under a strict tort liability theory in the absence of personal injuries. *Annot.*, 13 A. L. R. 3d 1057, 1091 (1967); 63 Am. Jur. 2d, *Product Liability*, §141, *Economic or Commercial Loss* (1972). Personal injury actions, for example may generate claims for such consequential damages as wage loss. Assuming liability, it is difficult to construct a logical reason for limiting the reach of damages to deny recovery of consequential damages as presented in the instant case while allowing such recovery in a personal injury case.