**RESSALLAT et al., Appellants and Cross–Appellees,**

**v.**

**BURGLAR & FIRE ALARMS, INC., Appellee and Cross–Appellant;**

**Physicians Insurance Company of Ohio, Appellant and Cross–Appellee;**

**General Telephone Company of Ohio.**

[Cite as *Ressallat v. Burglar & Fire Alarms, Inc.* (1992), 79 Ohio App.3d 43.]

Court of Appeals of Ohio,
Crawford County.

No. 3–91–21.

Decided March 26, 1992.

**44**

**46**

*Baker & Hostetler, Randall S. Rabe* and *Janine M. Marks,* for appellants Medhi M. and Judith Ressallat.

*Lowell B. Garverick,* for appellee Burglar & Fire Alarms, Inc.

*John T. Brown,* for appellant Physicians Insurance Company of Ohio.

EVANS, Judge.

This is an appeal by the plaintiffs, Medhi M. and Judith Ressallat, and a cross-appeal by defendant Burglar & Fire Alarms, Inc. ("BFA" or "appellee"), from judgments rendered by the Crawford County Court of Common Pleas on the parties' motions for summary judgment.

On October 7, 1974, the Ressallats ("appellants") entered into an agreement with BFA for the purchase of a burglar alarm system for their home. The system was designed to alert the Ressallats, both via warning lights and the sounding of a horn, when an unauthorized person had entered the house. The burglar alarm system was linked with the telephone system so that, simultaneous with the sounding of the alarm, a call was placed through the telephone lines to BFA's "central monitoring station." The Ressallats paid a monthly fee for these services.

On the advice of BFA's salesperson, the Ressallats arranged with the telephone company to have the phone cable, from the pole to the house, buried. However, in 1985 the Ressallats began having problems with the telephone lines. Although General Telephone Company ("GTE") resolved the difficulties with the phone lines, the cable was not reburied. Instead, it was strung directly from the pole to the Ressallats' house, suspended just a few feet above the ground. Although Dr. Ressallat contacted GTE several times about reburying the phone cable, the company took no action until after the burglary.

In September 1986, the Ressallats' home was burglarized. The burglar apparently obtained unimpeded access to the house by cutting the exposed telephone wires so as to prevent transmission of the alarm. Inside the house, wires to the burglar alarm horn were severed at the electric service box. Jewelry and coins worth over $100,000 were stolen from the house. The Ressallats' insurance company, Physicians' Insurance Company of Ohio ("PICO"), reimbursed the Ressallats in the amount of $17,125.37, the maximum payable on their homeowners' policy.

In September 1988, the Ressallats filed suit against BFA and others. However, on November 17, 1988, that suit was voluntarily dismissed, pursuant to Civ.R. 41(A). This suit was timely re-filed on November 13, 1989. See R.C. 2305.19 ("savings statute" allowing suit voluntarily dismissed to be refiled within one year). The complaint sounded in contract and tort, alleging that BFA had breached its express warranty on the burglar alarm system, had negligently sold, installed, and maintained the system, and had breached the implied warranties of merchantability and fitness. In addition, the Ressallats sued GTE, and BFA's parent company, Connecticut Consolidated Industries, Inc. Although appellants stated in their brief that they were also suing BFA for misrepresentation, the complaint does not allege facts supporting that claim. Appellant PICO was joined in this action as a subrogee to the rights of the Ressallats.

On November 7, 1990, appellee BFA filed a motion for summary judgment on the following bases: (1) that the Ressallats' claims were barred by the applicable statutes of limitations; (2) that BFA had effectively disclaimed all warranties under its contract with appellants, thus barring them from any related causes of action; and (3) that there were no genuine issues of material fact to be litigated. Along with their response to appellee's motion, the Ressallats filed a motion for "partial summary judgment," requesting a declaration from the trial court that the disclaimers of warranty relied on by BFA were "inconspicuous as a matter of law," and thus invalid.

The trial court denied the Ressallats' motion, ruling that BFA's warranty disclaimer was, as a matter of law, *conspicuous.* The court sustained BFA's motion in part, and denied it in part, finding that the action had been timely filed, and that there were no issues of fact to be resolved, in that no action on the part of BFA could be found to be the proximate cause of the Ressallats' loss.

After the Ressallats filed their notice of appeal, and BFA filed its cross-appeal, the trial judge transferred this case to "inactive status," pending the appeal. The parties each filed three assignments of error.

We will first address appellee's assignments of error on its cross-appeal, the first two of which were argued together:

"A

"The trial court erred in concluding as a matter of law that the first claim and second claim of the amended complaint of the plaintiffs-appellants Medhi M. Ressallat and Judith L. Ressallat and the cross-claims of defendant-appellant Physicians Insurance Company of Ohio that were respectively filed

against defendant-appellee Burglar & Fire Alarms, Inc. were commenced within the appropriate limitations of time permitted by law.

"B

"The trial court erred in concluding as a matter of law that the action accrued on the date of injury or damage and not the sale."

In its motion for summary judgment, appellee first maintained that the Ressallats failed to bring their claims within the time specified by the appropriate statutes of limitations. The trial court denied summary judgment on that basis, finding that "the actions are brought within the appropriate time limitations, in that the [cause of] action accrued on the date of the injury or damage, and not the sale."

Although appellants could possibly have brought their case as a contract action based on their contract for "services" with BFA, they chose to frame the action as a breach of contract for the sale of goods under the Uniform Commercial Code (R.C. 1301.01 *et seq.*), and in products liability, claiming breach of warranty, negligence, and breach of an implied warranty in tort. See *Langhals v. Holt Roofing Co.* (1988), 47 Ohio App.3d 114, 547 N.E.2d 401 (Article Two of UCC not applicable if service aspect of contract predominates over the sales aspect). Although a fifteen-year statute of limitations governs contract actions in general, see R.C. 2305.06, the "Statute of limitations in contracts for sale," R.C. 1302.98, provides in pertinent part:

"(A) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. * * *

"(B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered."

Therefore, unless a warranty is explicitly extended by contract, a breach under the UCC occurs at or around the time of the sale. A suit on the contract must be brought within four years after "delivery." R.C. 1302.98(A) and (B).

The trial court specifically found no facts in this case that would give rise to an extended warranty, thus delaying accrual of a cause of action. The court also found, however, that the suit was timely filed, even though the burglary occurred approximately twelve years after the Ressallats' purchase of the

burglar alarm. It must follow, then, that the judge did not base his ruling on an analysis of the case under the UCC.

■ The court's holding that "the action accrued on the date of the injury or damage, and not the sale," does find support in Ohio law, however. State and federal courts have looked to the substance rather than the form of a cause of action in interpreting Ohio's statutes of limitations. Thus, whether a suit is brought in contract or tort, when the "essence" of an action is wrongful harm to person or personal property, the R.C. 2305.10 statute of limitations is the appropriate one to apply. See, *e.g., Mahalsky v. Salem Tool Co.* (C.A.6, 1972), 461 F.2d 581 (two-year statute of limitations on injury to personal property applies to claim of breach of express and implied warranties arising out of sale of alleged defective goods), citing *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 50–51, 44 O.O. 72, 74, 97 N.E.2d 549, 551–552; *United States Fid. & Guar. Co. v. Truck & Concrete Equip. Co.* (1970), 21 Ohio St.2d 244, 50 O.O.2d 480, 257 N.E.2d 380.

R.C. 2305.10 provides:

"Bodily injury or injury to personal property. An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose. * * *"

■ The Ressallats brought their original action within a two-year period after the burglary took place. Therefore, we overrule appellee's first and second assignments of error on cross-appeal.

Appellee's third assignment of error states:

"C

"The court erred in not concluding as a matter of law that the Ressallats and PICO's tort claims failed to state valid causes of action on which relief can be granted."

■ For the reasons which follow, we conclude that a Civ.R. 12(B)(6) defense (or motion) is not the proper vehicle for resolution of the Ressallats' suit against appellee. Appellee appears to be asserting that appellants had no cause of action against it, based on the law in two Ohio cases which we find inapposite to the situation before us on appeal. In *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St.3d 40, 537 N.E.2d 624, the Supreme Court held that "in the absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence." *Id.* at 51, 537 N.E.2d at 635. See, also, *Avenell v. Westinghouse Elec. Corp.* (1974), 41 Ohio App.2d 150, 70 O.O.2d 316, 324 N.E.2d 583. There is nothing in the *Chemtrol*

holding quoted by appellee in support of its assignment of error that is relevant to this action. First of all, appellants herein are not "commercial buyers." Appellee argues that, because of his extensive education (in the medical field), Dr. Ressallat should be considered more sophisticated than an ordinary consumer when choosing a burglar alarm system appropriate for his home. Appellee further argues that, therefore, under UCC standards, the Ressallats should be considered commercial buyers, or "merchants," and should be allowed no tort remedies. Appellee's argument is without merit. The Uniform Commercial Code drafters clearly indicated that only someone who has "specialized knowledge" or skills as to the goods at issue or as to relevant business practices will be held to have dealt at "arm's length" with a seller, thereby waiving many of the available remedies for having been sold a defective product. See R.C. 1302.01, Official Comments.

Appellee also cites *Avenell, supra,* in support of its assignment of error. In *Avenell,* two commercial entities negotiated freely for the sale of a turbine generator, which was "a specialized piece of equipment, familiar to both buyer and seller." *Avenell,* 41 Ohio App.2d at 159, 70 O.O.2d at 321, 324 N.E.2d at 589. The purchaser in that case was not seeking damages for any bodily injury or injury to personal property, but requested compensation for consequential, or "economic," losses. Appellee argues that the Ressallats have no claim against it because they were claiming only "economic loss," as were the purchasers in *Avenell* and *Chemtrol.* However, appellee is in error to call the Ressallats' loss of their personal property an "economic loss" under Ohio law, and also errs in asserting that there is no recovery allowed for economic losses in Ohio.

In support of his argument, appellee cites *Fireman's Fund Am. Ins. Cos. v. Burns Electronic Security Serv., Inc.* (1980), 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131, an Illinois appeals court case in which recovery of an economic loss under theories of tort was denied. It is puzzling that appellee was, as it stated, "unable to locate a case in Ohio like ours," since the *Fireman's Fund* case pointedly notes that Ohio law differs from Illinois law on the issue. *Fireman's Fund,* 93 Ill.App.3d at 300, 48 Ill.Dec. at 731, 417 N.E.2d at 133, fn. 1 ("economic loss can be recovered in Ohio under strict liability in tort"). The Illinois court cites *Mead Corp. v. Allendale Mut. Ins. Co.* (N.D.Ohio 1979), 465 F.Supp. 355, 367, a case which thoroughly discusses Ohio law and "economic" damages. Furthermore, *Mead Corp.* has since been cited as authority on the issue of economic loss by the Supreme Court of Ohio in *Chemtrol,* 42 Ohio St.3d at 43, 537 N.E.2d at 628.

■ Contrary to appellee's assertion, the Ressallats are not seeking damages for an economic loss. The Supreme Court in *Chemtrol* described the

types of injury which may be compensable due to a product defect. The court defined "property damage" as "either damage to the defective product itself or damage to other property." *Id.* at 43, 537 N.E.2d at 628. However, "economic loss" refers either to the decreased value of the product itself, *i.e.,* "the difference between the actual value of the defective product and the value it would have had had it not been defective ('direct' economic loss)," or to consequential losses such as "the value of production time lost and the resulting lost profits ('indirect' economic loss)." *Id.* at 43–44, 537 N.E.2d at 628–629. Clearly, appellants are not seeking damages for "economic loss" as defined by Ohio courts.

For the foregoing reasons, we conclude that appellee's third assignment of error is groundless. The assignment of error is overruled.

We now turn to appellants' assignments of error on appeal. The first two assignments state as follows:

"I.

"The trial court erred as a matter of law in granting summary judgment to appellee and holding that appellee's exclusion of warranties is conspicuous.

"II.

"The trial court erred as a matter of law in overruling appellants' motion for partial summary judgment."

Essentially, both of these assignments claim error in the trial court's finding that the disclaimer of warranties in the sales contract is conspicuous. In their motion for summary judgment, appellants asked the court to declare the disclaimer "inconspicuous as a matter of law."

Under R.C. 1302.29, unless exclusions or disclaimers of warranty are part of the parties' "bargain in fact," a purchaser of goods in Ohio receives, in addition to any express warranty (which generally only provides for repair or replacement of defective goods), an implied warranty that the goods shall be merchantable and "fit" for their intended purpose. See R.C. 1302.27 and 1302.28. Although courts generally uphold disclaimers of implied warranties between parties who have equal bargaining power, they are reluctant to afford validity to such disclaimers when a purchaser is simply a consumer, rather than a commercial entity. As stated by the Supreme Court:

" * * * [D]isclaimers of implied warranties * * * must be a part of the parties' bargain in fact. If it is contained in a printed clause which was not conspicuous or brought to the buyer's attention, the seller had no reasonable expectation that the buyer understood that his remedies were being restricted

to repair and replacement." *Ins. Co. of N. Am. v. Automatic Sprinkler Corp.* (1981), 67 Ohio St.2d 91, 96–97, 21 O.O.3d 58, 61, 423 N.E.2d 151, 154–155. Further, R.C. 1302.29(B) requires compliance with the following:

" * * * Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. * * * "

■ The code itself defines "conspicuous," and provides that a determination of conspicuousness is a matter of law for the court to decide. R.C. 1301.01(J) provides:

"(J) 'Conspicuous.' A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. * * * Whether a term is 'conspicuous' or not is for decision by the court."

■ The disclaimer of warranties at issue herein appears on the back page of the sales contract, which was signed on the front by both parties. The disclaimer is buried in the middle of a full page of small type, in a style identical to the rest of the text on the page. There are no outstanding headings alerting a purchaser to the disclaimer, and there is no mention of "merchantability" as required by R.C. 1302.29. Furthermore, Dr. Ressallat testified in his deposition that the disclaimer was not mentioned by the salesman at the time of the sale of the burglar alarm system, nor was it brought to his attention that anything was printed on the back page of the contract.

We believe the court erred in concluding that the disclaimer of warranties in these parties' contract was conspicuous. First, the disclaimer fails to mention "merchantability," a requirement of the code which must be fulfilled if a disclaimer of the implied warranty of merchantability is to be found valid. Additionally, we find that the trial court ignored the statutory language and applied an improper standard in determining that the disclaimer was conspicuous. In making that determination, the court stated:

"These warranties and conditions are not hidden, but clearly spelled out in common understandable language which leaves no doubt as to what is and what is not covered, and when."

■ While we agree that the common, ordinary definition of "conspicuous" can be "not hidden," or "clearly spelled out," the code explicitly sets forth

what the term means under the circumstances of this case. One's understanding of the terminology bears no relation to conspicuousness under the code. In the disclaimer at issue, there are no prominent headings, and there is no print of a different style or color that would draw one's attention. The disclaimer wording blends in with the surrounding "terms" and "conditions" and is in no way more noticeable. We find that the disclaimer in the contract is, as a matter of law, inconspicuous. See *Ins. Co. of N. Am., supra*, 67 Ohio St.2d at 96–97, 21 O.O.3d at 61, 423 N.E.2d at 154–155.

 The first two assignments of error are well taken. However, although we sustain the assignments of error, we find that in this case the court's error was harmless, and not prejudicial to appellants. Absent evidence or testimony supporting the breach of warranty claims, the disclaimers are irrelevant, and thus provide no ground for reversal of the court's judgment.

Appellants' third assignment of error states:

"III.

"The trial court erred as matter of law in granting appellee's motion for summary judgment and holding that no genuine issue of material fact exists as to the issue of proximate causation."

 Appellants contend that there is a genuine issue of material fact as to "whether the burglary was foreseeable by Appellee and whether Appellee's negligence was a proximate cause of the Ressallats' injury." Before the issue of proximate cause is even reached in a negligence analysis, it must be determined that the defendant owed a duty to the plaintiff. Appellants claim that appellee had a duty to rectify appellants' problem with the exposed telephone cable. They maintain that the repairman who serviced the alarm system shortly before the burglary must have noticed that the cable was no longer buried, and that appellee's failure to act on that knowledge was negligence.

Dr. Ressallat himself testified that BFA had advised him at the time of the burglar alarm purchase to have the telephone lines buried for the sake of security. Further, after GTE had dug up the lines for repair purposes, it failed to rebury them despite several requests from appellants. Burial of the telephone cable was never a duty assumed by BFA.

 Appellants appear to be claiming that BFA's negligence stems from its failure to take responsibility for burial of the phone wires. Appellants make no other allegations of negligence except that in selling, maintaining or servicing the system, BFA must have been negligent, or that false representations were made by the salesman on which appellants relied in their decision

to purchase appellee's system. Appellants present no evidence of failure or defect in the actual system or its components. There is simply no evidence that BFA breached any duty it could possibly have had to appellants. Appellants offer no facts evidencing how any warranty was breached, nor do the complaint, transcript, or affidavits indicate that any action of appellee was the proximate cause of the burglary. Furthermore, BFA's evidence that the alarm system was functioning properly immediately before and after the robbery was unrefuted.

Therefore, construing all the evidence and allegations in appellants' favor, which the court is required to do under Civ.R. 56, we conclude that no reasonable person could find that BFA sold appellants a defective alarm system or failed in its duty to maintain and repair the system under the parties' contract, thereby becoming liable for appellants' loss of property. Indeed, sellers of goods are not required to be insurers of property, absent assumption of such a duty.

A party responding to a summary judgment motion must set forth specific facts on all material issues upon which it bears the initial burden of proof. The non-moving party must go beyond the pleadings, designating specific facts showing there is a genuine issue for trial. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273. Appellants have not satisfied this burden.

Having found no evidence as to BFA's negligence or breach of warranties sufficient to survive a motion for summary judgment, and having found no error prejudicial to the appellants and cross-appellants herein, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., and SHAW, J., concur.