OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio. Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Sun Refining and Marketing Company v. Crosby Valve and Gage
Company.
[Cite as Sun Refining & Marketing Co. v. Crosby Valve & Gage
Co. (1994), -- Ohio St.3d ---.]
Statutes of limitations -- Statute of limitations that applies
    to parties to a contract when plaintiff sues for property
    damage.
    (No. 93-739 -- Submitted September 29, 1993 -- Decided
March 2, 1994.)
When a sophisticated commercial buyer sues for property damage
    caused by an allegedly defective product, claims relating
    to property other than the defective product itself are
    controlled by the statute of limitations contained in R.C.
    2305.10 for personal property and R.C. 2305.09(D) for real
    property.
    On Order from the United States District Court for the
Northern District of Ohio, Certifying a Question of State Law,
No. 3:89CV7588.
    On November 12, 1985, an explosion occurred at respondent
Sun Refining and Marketing Company's ("Sun") oil refinery in
Toledo.  Two Sun employees were seriously injured and the
facility was extensively damaged.  On October 19, 1989, Sun
filed a four-count complaint alleging that a rupture disc which
Sun had purchased from petitioner Crosby Valve & Gage Company
("Crosby") had malfunctioned and caused the explosion.  It is
undisputed that Count II of Sun's complaint states a
breach-of-warranty claim for $441,000 for damage to its real
estate and fixtures.
    Crosby had delivered the disc to Sun on October 18, 1985,
four years and one day before the filing of Sun's complaint.
Crosby argues that Sun's breach-of-warranty claim is
time-barred since the applicable statute of limitations is the
four-year statute of limitations set forth in R.C. 1302.98 (UCC
2-725), which begins to run upon "tender of delivery."
    Sun asserts that the appropriate statute of limitations is
the four-year "catch all" provision for tort claims contained
in R.C. 2305.09.  The statute of limitations for tort claims
begins to run no earlier than upon the occurrence of the event

producing the loss. Since Sun's complaint was filed within four years after the date of the explosion, it would be timely filed under that statute.

Specifically, the district court seeks our guidance regarding which statute of limitations to apply to Sun's breach-of-warranty claim. The court certifies to us the following question, pursuant to S. Ct. Prac. R. XVI:

"[W]hich statute of limitations applies to parties to a contract when the plaintiff is suing for property damage."

Jones & Scheich, Martin B. Morrissey and Christopher F. Jones, for respondent.

Robison, Curphey & O'Connell, Jack Zouhary and Thomas J. Antonini, for petitioner.

Pfeifer, J.    Our response to the district court's certified question is as follows: When a sophisticated commercial buyer sues for property damage caused by an allegedly defective product, claims relating to property other than the defective product itself are controlled by the statute of limitations contained in R.C. 2305.10 for personal property and R.C. 2305.09(D) for real property. Our rationale is set forth below.

In Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co. (1989) 42 Ohio St.3d 40, 537 N.E.2d 624, this court made it clear that in a commercial setting, a buyer's proper remedy for recovery of economic losses resulting from damage to a defective product itself is through a contract action for breach of warranty under the UCC. This court held that the buyer could not recover for economic losses premised on tort theories "in the absence of injury to persons or damage to other property." Id. at 51, 537 N.E.2d at 635. The court's definition of "economic loss" was as follows:

"'Economic loss' is described as either direct or indirect. 'Direct' economic loss includes the loss attributable to the decreased value of the property itself. Generally, this type of damages encompasses 'the difference between the actual value of the defective product and the value it would have had had it not been defective.' * * *  It may also be described as 'the loss of the benefit of the bargain * * *.' *** 'Indirect' economic loss includes the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits." Chemtrol at 43-44, 537 N.E.2d at 629.

The court implied that commercial parties are not limited to contractual causes of action when a defective product causes tort damages, i.e., damage to persons or property other than the product itself.

This court directly recognized that a commercial buyer may recover damages based upon tort theories of liability in Lawyers Cooperative Publishing Co. v. Meuthing (1992), 65 Ohio St.3d 273, 603 N.E.2d 969. In Lawyers Cooperative, the counterclaimant attorney sought damages for humiliation, loss of reputation, and damage to his law practice due to the counterclaim defendant's alleged negligence in publishing faulty information in law books the lawyer had purchased. The defendant publisher claimed that those causes of action should

be controlled by the statute of limitations contained in Ohio's UCC provisions.

This court found that the lawyer had the option of filing a contract claim under Ohio's UCC, but was not limited to that claim due to the nature of his damages. The court found that the lawyer did not merely seek recovery for economic loss -- his allegations of humiliation and loss of reputation were allegations of personal injury and his allegation of injury to his law practice was an allegation of property damage. This court held that Chemtrol, which precluded recovery of economic losses on tort theories of liability, did not so preclude the lawyer's recovery of tort damages.

The character of the loss determines whether a commercial party may recover in tort. If the loss is an economic one, a cause of action will lie only in contract.

In the present case, for example, Sun does not seek recovery for damage to the disc nor for loss of profits due to the failure of the disc or other such consequential damages. It seeks recovery for damage to its real estate and fixtures. The damages it seeks are not economic, and are therefore recoverable under a tort theory of liability. For parties like Sun who suffer such injuries, the tort theory of breach of implied warranty is available. Lonzrick v. Republic Steel Corp. (1966), 6 Ohio St.2d 227, 229-230, 35 O.O.2d 404, 405-406, 218 N.E.2d 185, 188.

This line of decisions does not infringe upon Ohio's UCC provisions. The underlying purpose of the UCC is, in part, to clarify and make uniform commercial law. R.C. 1301.02(B)(1) and (3). That is, the UCC lends predictability to commercial transactions. It governs the bargain. If the product is faulty, inefficient, or breaks, resulting in diminished economic returns, the proper remedy is through the contract and the relevant UCC provisions. When the benefit of the bargain is diminished or lost, the contract and the UCC control the parties' rights.

When persons or property outside the original bargain are damaged, the terms of the bargain no longer control. In such an instance, when there is more than a loss of the benefit of the bargain, when the damages fall outside the definition of "economic loss," a duty outside the contract has been breached. That breach of duty is governed by tort law.

A sales contract does not govern the entire relationship between commercial parties -- it governs only the sale of the product. A seller still owes to the buyer the same noncontractual duty that he owes to everyone else -- that the seller's product will not cause the destruction of another's property.

Therefore, in a products-liability action between sophisticated commercial parties, the character of the loss determines the applicable statute of limitations. Losses due to a diminishing of the expected benefit of the bargain fall under the statute of limitations set forth in R.C. 1302.98 (UCC 2-725). Causes of action for losses resulting from damage to property outside the original bargain are controlled by the statute of limitations in either R.C. 2305.10 or 2305.09(D).

A.W. Sweeney and Douglas, JJ., concur.

Resnick, J., concurs in the syllabus and judgment only.

F.E. Sweeney, J., concurs in judgment only.

Moyer, C.J., and Wright, J., dissent.

Wright, J., dissenting.   On October 18, 1985, Crosby Valve & Gage Company shipped to Sun Refining and Marketing Company a pressure release disc manufactured precisely to Sun Refining's specifications.  The purchase involved an arm's-length commercial transaction between two sophisticated parties that were dealing in privity.  Included in the contract were terms negotiated by Sun Refining and Crosby Valve concerning risk of loss from defects in the product.

Less than a month later, on November 12, 1985, a Sun Refining employee released some built-up pressure into a concrete sewer which exploded, injuring two employees and causing some property damage.1  Alleging that the disc had malfunctioned, Sun Refining filed this cause of action in federal court on October 19, 1989 -- one day after the four-year statute of limitations period for causes of action filed under the UCC had expired.

Because Sun Refining is time-barred from bringing its breach of contract action against Crosby Valve, its only alternative is to seek recovery in tort.  The general tort statute of limitations is also four years, but would not have begun to run until the explosion.  In its complaint, therefore, Sun Refining seeks to recover under strict liability, breach of warranty, and negligence.

Crosby Valve maintains that breach of warranty claims are governed by the UCC, while Sun Refining asserts that its breach of warranty claim sounds in tort.

The narrow issue facing this court is whether Count II, the breach of warranty claim, is time-barred by R.C. 1302.98 (UCC 2-725).  The federal district court posed the question as: "[W]hich statute of limitations applies to parties to a contract when the plaintiff is suing for property damage[?]"

The majority concludes with no supporting authority that it is the character of the loss and not the relationship of the parties that determines whether a commercial party in privity may recover on a theory of implied breach of warranty.  Because I believe that this case is wholly governed by the UCC, and that the majority's decision lacks sound reasoning, is a departure from Ohio law, and is bad policy, I must dissent.

The law of tort products liability evolved for several reasons:  a lack of contractual privity between the manufacturer and the ultimate consumer, the uneven bargaining power between buyer and seller, the difficulty of proving negligence by the manufacturer when the consumer is several steps down the chain of distribution, and the deterrent value of placing the risk of loss on the manufacturer because it is better able to correct the defects.  In other words, the law of products liability arose because traditional sales warranties with their requirement of privity failed to give injured persons who are not in privity with the manufacturer adequate protection.  Ohio recognized this problem in Lonzrick v. Republic Steel Corp. (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, and thus permitted a plaintiff who was not in privity to bring an action based upon implied warranty in tort.

However, neither Lonzrick nor the other two cases cited by the majority support the majority's position.

In Lonzrick, this court in dicta prefaced its argument with the statement that in products liability cases the plaintiff may pursue either an action in tort grounded in negligence, a cause of action based on the contract, or an implied warranty in tort.  Because Lonzrick did not allege negligence and because there was no privity between him and the defendant, the court examined the implied warranty in tort argument.  Citing many of the reasons for the rise of products liability claims that I have listed above, the court went on to hold that there need be no contractual relationship between a plaintiff and a defendant in order to bring a breach of warranty action in tort.  Thus, Lonzrick stands for the proposition that parties who are not in privity are now permitted to bring an action for an implied breach of warranty.  It does not suggest that those who are already in privity may avail themselves of that remedy and thus circumvent an existing contractual agreement.

Moreover, the fact that the Lonzrick court stated in dicta that a plaintiff may pursue a products liability action in tort grounded upon negligence is of no assistance in this case. Even though Sun Refining seeks recovery in negligence in Count III of its complaint, that is not the issue before this court. Rather, the question is whether the UCC statute of limitations or the general tort statute of limitations applies to Sun Refining's breach of warranty action.  Lonzrick provides no authority for the majority.

Likewise, Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co. (1989), 42 Ohio St.3d 40, 537 N.E.2d 624, and Lawyers Cooperative Publishing Co. v. Muething (1992), 65 Ohio St.3d 273, 603 N.E.2d 969, are readily distinguishable from this case.  In Chemtrol, we permitted "[a] commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself [to] maintain a contract action for breach of warranty under the Uniform Commercial Code ***."  Chemtrol, paragraph two of the syllabus.  The majority today correctly points that out.  However, the majority misstates the second part of that syllabus paragraph in Chemtrol by asserting "the buyer could not recover for economic losses premised on tort theories 'in absence of injury to persons or damage to other property [emphasis added],'" thus implying that all tort remedies are available to a commercial buyer in the case of injury to person or damage to property.  A close reading of the language in Chemtrol reveals the majority's error.  The complete statement in Chemtrol actually reads that "in absence of injury to persons or damage to other property, the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence."  (Emphasis added.)  Chemtrol, paragraph two of the syllabus.  While this may imply that an action for negligence or strict liability may lie if there is injury to persons or property, it in no way suggests that in such a case an action for breach of warranty would lie.  Thus, Chemtrol is no support for the majority either.

Finally, the majority cites Muething for the principle that this court has "directly recognized that a commercial buyer may recover damages based upon tort theories of liability."  This is true to the extent that we permitted

Muething to maintain a tort cause of action in negligence even though he was a commercial buyer with privity. This holding is perfectly consistent with the syllabus paragraph in Chemtrol which implies that a commercial buyer in privity may bring a tort cause of action in negligence or strict liability for injury to persons or damage to property. But the Meuthing court did not address the issue of whether a commercial buyer in privity may sustain a tort cause of action for breach of warranty. Indeed, in my judgment that issue is foreclosed by our holding in Chemtrol.

Furthermore, the Muething and Chemtrol decisions neither suggest nor support the majority's assertion that "[t]he character of the loss determines whether a commercial party may recover in tort." Significantly, the majority offers no authority for this bold statement.

The proper law governing this case is the UCC. R.C. 1302.98 (UCC 2-725) states in relevant part:

"(A) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.***

"(B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made ***."

Moreover, R.C. 1302.89 (UCC 2-715) states in part:

"(B) Consequential damages resulting from the seller's breach include:

"***

"(2) injury to person or property proximately resulting from any breach of warranty." (Emphasis added.)

The import of these two code sections should be apparent. When commercial parties are bargaining in privity at arm's-length, a cause of action for property damage resulting from a breach of warranty is subject to the UCC. That cause of action must be filed within four years of the breach, which occurs upon tender of delivery.

The Official Comment to UCC 2-725 states the policy reasons behind the statute of limitations: [The purposes of this section are to] introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief from concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation ***. This Chapter takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice."

We indicated our support for this position in Chemtrol when, by quoting the Eighth District Court of Appeals:

"'Application of the doctrine of implied warranty in tort to all products liability cases would render useless many, if not all, of the Uniform Commercial Code provisions involving products liability. For example, *** whenever the doctrine of implied warranty in tort is applicable, the provision of the Uniform Commercial Code permitting the parties to contractually modify or exclude warranties, and to modify or limit remedies are of no avail. Stated another way, where implied warranty in

tort applies, the parties are not free to determine by contract the quality of goods which the seller is bound to deliver or the remedies available to the buyer in the event that the goods do not measure up to the agreed quality.  It is clear, then, that the doctrine of implied warranty in tort must be limited in its applicability.  Otherwise, unlimited application would emasculate the Uniform Commercial Code provisions dealing with products liability.'"  Chemtrol at 50, 537 N.E.2d at 634, quoting Avenell v. Westinghouse Elec. Corp. (1974), 41 Ohio App.2d 150, 157-158, 70 O.O.2d 316, 321, 324 N.E.2d 583, 588.

In my judgment, the relationship between Crosby Valve and Sun Refining falls squarely within the policy reasons established by the drafters of the UCC and sanctioned by this court.  The parties made an arm's-length transaction and were free to negotiate the terms of the contract.  Thus, their transaction, including remedies, is governed by the UCC.  It is unfortunate that Sun Refining delayed filing its cause of action for so long, but in my opinion the policy behind the UCC is sound and, considering the circumstances, presented Sun Refining with a sufficient remedy.  Because I believe that where sophisticated commercial parties deal in privity a cause of action for property damage resulting from a breach of warranty is subject to the UCC statute of limitations, I must respectfully dissent.

Moyer, C.J., concurs in the foregoing dissenting opinion.

FOOTNOTE:
1  Only the property damage is at issue here.  The personal injury claims of the two employees were settled in 1989.