In re: **WHIRLPOOL CORP. FRONT–LOADING WASHER PRODUCTS LIABILITY LITIGATION.**

Case No. 1:08–WP–65000.
MDL No. 2001.

United States District Court,
N.D. Ohio,
Eastern Division.

Signed Sept. 19, 2014.

David R. Kott, McCarter & English, Newark, NJ, Galen D. Bellamy, Joel S. Neckers, Michael Timothy Williams, Theresa R. Wardon, Wheeler Trigg O'Donnell, Alison G. Wheeler, Eric R. Olson, Bartlit, Beck, Herman, Palenchar & Scott, Scott S. Baker, Denver, CO, Heather M. Lutz, Anthony J. O'Malley, Vorys, Sater, Seymour & Pease, Cleveland, OH, James T. Irvin, III, Nelson, Mullins, Riley & Scarborough, Columbia, SC, John C. Fitzpatrick, Philip S. Beck, Rebecca Weinstein Bacon, Bartlit, Beck, Herman, Palenchar & Scott, Brad E. Rago, Chicago, IL, Robert H. Brunson, Nelson, Mullins, Riley & Scarborough, Charleston, SC, Charles Philip Flick, Seipp & Flick LLP, Miami, FL, F. Daniel Balmert, Vorys, Sater, Seymour & Pease, Akron, OH, James K. Leader, Leader & Berkon, Scott T. Baker, New York, NY, for Whirlpool Corp. Front-loading Washer Products Liability Litigation.

## MEMORANDUM AND ORDER

CHRISTOPHER A. BOYKO, District Judge:

On July 12, 2010, pursuant to Fed. R.Civ.P. 23(a) and 23(b)(3), this Court certified a class of Ohio plaintiffs who own Whirlpool Duet washing machines. *See* docket no. 141 (*"Class–Cert. Order"*).[1] The Sixth Circuit Court of Appeals affirmed,[2] and this Court recently denied Whirlpool's Motion to Decertify the Class, *see* docket no. 366 (*"Class Redefinition Order"*).[3]

---

2. *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.,* 678 F.3d 409 (6th Cir. 2012), *cert. granted, judgment vacated sub nom. Whirlpool Corp. v. Glazer,* —— U.S. ——, 133 S.Ct. 1722, 185 L.Ed.2d 782 (2013), and *affirmed,* 722 F.3d 838 (6th Cir.2013), *cert. denied,* —— U.S. ——, 134 S.Ct. 1277, 188 L.Ed.2d 298 (2014).

The parties have now filed cross-motions for summary judgment. For the reasons stated below: (1) Whirlpool's Motion for Summary Judgment (docket no. 308) is **GRANTED** as to plaintiffs' OCSPA claim and failure-to-warn claim, and otherwise **DENIED;** and (2) Plaintiff's Motion for Summary Judgment (docket no. 309) is **DENIED.**[4] Accordingly, trial of the two remaining claims brought by the Ohio plaintiff class—Design Defect and Breach of Implied Warranty—will go forward as scheduled.

## I. Plaintiffs' Claims.

In the Third Amended Master Class Action Complaint (docket no. 80), Ohio Plaintiffs Gina Glazer and Trina Allison each allege they bought a front-loading, high-efficiency washing machine manufactured by Whirlpool under the "Duet" brand-name and the machine subsequently developed serious mold problems. Glazer and Allison assert four state-law claims: (1) violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev.Code § 1345.01 *et seq.;* (2) Tortious Breach of Warranty; (3) Negligent Design; and (4) Negligent Failure to Warn.

Glazer and Allison moved for certification of a class of Ohio plaintiffs, and the Court granted that motion in part. Specifically, the Court declined to certify the OCSPA claim for class action treatment, but did certify the claims for Breach of Warranty, Negligent Design, and Negligent Failure to Warn. *See Class–Cert. Order,* 2010 WL 2756947 at *4. The Court has scheduled these claims for trial beginning October 7, 2014. Although the OCSPA claim is not certified for class action

treatment, it remains a part of this case as a claim brought by the individual named Plaintiffs, Glazer and Allison. Whirlpool moves for summary judgment on all four claims.

## II. Legal Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.,* 649 F.Supp.2d 702, 710 (N.D.Ohio 2009) *(citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party may satisfy this burden either by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," or by demonstrating "to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *United States v. Ruth,* 2014 WL 1333188 at *2 (N.D.Ohio Mar. 31, 2014) (citing *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548).

Once the moving party meets its burden under Rule 56, the burden shifts to the

**3.** *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.,* 302 F.R.D. 448, 2014 WL 4351415 (N.D.Ohio Sept. 2, 2014).

**4.** In addition, Whirlpool's Motion to Strike Exhibit 14 attached to Plaintiffs' Motion for

Summary Judgment (docket no. 353) is **DENIED as moot.**

nonmoving party, "who must present some 'specific facts showing that there is a genuine issue for trial.'" *Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 236 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In reviewing a motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in its favor." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir.2000). Ultimately the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### III. Law of the Case.

As footnotes 1–3 reveal, there exists a long procedural history in connection with the question of class certification. During that history, this Court and the Sixth Circuit Court of Appeals each examined several times the claims brought by the Ohio plaintiffs. These earlier examinations implicate the doctrine of law of the case.

 When a case has been remanded by an appellate court, the trial court is bound "to proceed with the mandate and law of the case as established by the appellate court." *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). The law-of-the case doctrine "provides that 'unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation.' * * * This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir.2002)

(quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 25 (1st Cir.1997)).

"It is clear that when a case has been remanded by an appellate court, the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.'" *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir.1997) (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). Ultimately, the law of the case doctrine precludes a court from "reconsideration of identical issues." *Id.* "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Id.* (quoting *Coal Resources, Inc. v. Gulf & Western Ind.*, 865 F.2d 761, 766, *opinion amended on denial of reh'g*, 877 F.2d 5 (6th Cir.1989)). *See Wye Oak Technology, Inc. v. Republic of Iraq*, 666 F.3d 205, 219 (4th Cir.2011) ("The law of the case doctrine 'is a prudential rule rather than a jurisdictional one,' * * * and it 'merely expresses the practice of courts generally to refuse to reopen what has been decided.'").

### IV. Analysis—Whirlpool's Motion.

#### A. Claim for Violation of Ohio Consumer Sales Practices Act ("OCSPA").

In Count I of their Complaint, Plaintiffs Allison and Glazer assert Whirlpool violated the OCSPA by "engag[ing] in unfair, deceptive, and unconscionable practices by: (1) marketing and selling Washing Machines with defects that cause lack of dependable operation and thorough cleaning of [laundry] with normal use and/or created a substantial risk that such problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks."

Complaint at ¶ 126. Whirlpool argues this claim is barred by the applicable statute of limitations. The Court agrees.

In *Savett v. Whirlpool Corp.*, 2012 WL 3780451 (N.D.Ohio Aug. 31, 2012) (Gaughan, J.), the plaintiff bought a Whirlpool washing machine "marketed as 'ENERGY STAR' compliant." *Id.* at *1. The plaintiff sued Whirlpool, alleging his washing machine did not, in fact, "meet ENERGY STAR standards." *Id.* Among other claims, the plaintiff asserted Whirlpool engaged in an unfair or deceptive practice in violation of the OCSPA.

The *Savett* court noted that an OCSPA claim "may not be brought more than two years after the occurrence of the violation which is the subject of suit." *Id.* at *3 (quoting Ohio Rev.Code § 1345.10(C)). Further, the "discovery rule does not apply to claims under the OCSPA." *Id.* (citing *Rosenow v. Shutrump & Assocs.*, 163 Ohio App.3d 500, 839 N.E.2d 82, 86–87 (2005) and *Sproles v. Simpson Fence Co.*, 99 Ohio App.3d 72, 649 N.E.2d 1297, 1302 (1994)). The *Savett* court held that "the allegedly wrongful act occurred at the time of sale and ... the statute of limitations began to run at that time. Since plaintiff failed to file his complaint within two years of the sale, plaintiff is barred from recovering damages under the OCSPA." *Id.* See also *Anderson v. United Fin. Sys. Corp.*, 2012 WL 4758134 at *6 (N.D.Ohio Oct. 5, 2012) (Boyko, J.) ("no ... discovery rule applies to actions for damages under § 1345.10(C), which sets forth an absolute two-year statute of limitation").

The same analysis applies in this case. Plaintiff Allison purchased her Duet washing machine in October 2005, while Plaintiff Glazer purchased her Duet washing machine in April 2006. They filed their Complaint in June of 2008, more than two years after they made their purchases. Accordingly, their OCSPA claims are barred by the applicable statute of limitations. Whirlpool's Motion for Summary Judgment on Allison's and Glazer's OCSPA claims is granted.[5]

**B. Claim for Negligent Design.**

In Count III of their Complaint, Plaintiffs allege Whirlpool "failed to use appropriate design, engineering, and parts in manufacturing the Washing Machines," leading to the following product defects, among others: "(a) accumulat[ion of] mold and mildew and/or residue or growth within the Washing Machines; (b) produc[tion of] a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes; and (c) produc[tion of] a mold or mildew odor on clothes and other items washed in the Machines." Complaint at ¶¶ 143, 2. During its second examination of this Court's *Class–Cert. Order*, the Sixth Circuit Court of Appeals defined the necessary elements of a negligent design claim. The court stated: "To prove a claim of negligent design, the plaintiffs must show: (1) a duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately caused by the breach." *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 847 (6th Cir.2013) ("*Whirlpool II* ") (applying Ohio law and

---

5. In their response brief, Plaintiffs did not address Whirlpool's argument that it is entitled to summary judgment on the OCSPA claim on statute of limitations grounds, perhaps because Whirlpool is so clearly correct. As such, Plaintiffs have also waived opposition to entry of summary judgment on this

claim. See *Scott v. Tennessee*, 1989 WL 72470 at *2 (6th Cir.1989) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion").

quoting *Briney v. Sears, Roebuck & Co.,* 782 F.2d 585, 587 (6th Cir.1986)).

Whirlpool argues it is entitled to summary judgment on Plaintiffs' claim for negligent design for two reasons: (1) "proof of an unreasonable *safety* hazard is required for a negligent design claim," but plaintiffs "have provided no proof that the Washers are *dangerous,*" Motion at 11–12 (docket no. 308–1) (emphasis added); and (2) Plaintiffs "cannot prove that *all* Washer models are negligently designed and *none* of Whirlpool's design changes fixed the alleged defects," *id.* at 13 (emphasis in original). The Court concludes neither argument is well-taken.

Whirlpool's first argument is that Ohio law recognizes a claim for negligent design only if the alleged product flaw is a safety defect that poses risk of personal injury. In this case, the alleged design flaws carry no safety risk—Plaintiffs simply assert the flaws cause accumulation of mold in the washing machine, leading to bad-smelling homes and laundry—and the only injury Plaintiffs claim is economic loss, meaning "the difference between what consumers paid [for their Duet machine] and what they would have paid absent the alleged breach." Reply at 26 (docket no. 350).[6] Whirlpool supports its argument by quoting the following language from *Briney,* which the Sixth Circuit cited in *Whirlpool II:* "A product need not be 'accident or foolproof, but *safe* for the use for which it was intended.' In the instant case, it is necessary to determine whether the Plaintiffs produced evidence that Peter Briney was *injured* as a result of [the defendant's]

failure to design against a reasonably foreseeable *hazard." Briney v. Sears, Roebuck & Co.,* 782 F.2d 585, 587–88 (6th Cir.1986) (citations omitted) (emphasis added by Whirlpool, see docket no. 308–1 at 11). Whirlpool insists this language from *Briney* shows that Ohio recognizes a claim for negligent design only if the alleged flaw poses a *physical danger,* and Plaintiffs have no claim for, nor evidence of, personal injury.

 Whirlpool's argument fails, however, because other cases reveal that Ohio law does not restrict a negligent design claim to only safety flaws. As this Court held in *Hoffer v. Cooper Wiring Devices, Inc.,* 2007 WL 1725317 (N.D.Ohio, June 13, 2007) (Boyko, J.), a plaintiff may bring a negligent design claim to recover "economic loss ... connected to alleged damage to or decreased value of a defective product"—which loss may or may not be caused by a safety-related defect. *Id.* at *8. See also In re Porsche Cars North America, Inc.,* 880 F.Supp.2d 801, 871–72 (S.D.Ohio 2012) (citing several cases, including Judge Gwin's opinion in this case (*Whirlpool,* 684 F.Supp.2d at 951) and *Chemtrol* to support the conclusion that negligence claims for non-safety defects were actionable). Indeed, the Sixth Circuit Court of Appeals stated in this case that: (1) "Ohio law permits ordinary consumers who are not in privity of contract with product manufacturers to bring claims such as negligent design and negligent failure-to-warn in order to recover damages for *economic injury only;* " and (2) "[t]he claims for tortious breach of

---

6. Plaintiffs have dropped their claim for damages flowing from "health hazards," Complaint at ¶ 141, as well as any claim for compensation for consequential damages, such as ruined laundry. Plaintiffs now seek only damages for direct economic loss. *See Huffman v. Electrolux North America, Inc.,* 961 F.Supp.2d 875, 878 (N.D.Ohio 2013) (defining

economic loss as "the difference in value between what [the plaintiff] paid for the washing machine and value of the machine with the alleged defect"). *See also Ressallat v. Burglar & Fire Alarms, Inc.,* 79 Ohio App.3d 43, 606 N.E.2d 1001, 1006 (1992) (defining direct and indirect (or consequential) economic loss).

warranty and negligent design rise or fall on whether a design defect proximately *causes mold or mildew to develop* in the Duets." *Whirlpool II,* 722 F.3d at 856, 853 (emphasis added).

Whirlpool's second argument fares no better, for reasons discussed at length in the Court's recent *Class Redefinition Order*. In its Motion to Decertify, Whirlpool argued "that the Court should include in the class definition Duets that are materially different, and then decertify the class because it includes Duets that are materially different." *Class Redefinition Order,* 302 F.R.D. at 469, 2014 WL 4351415 at *18. The Court rejected this argument, instead redefining the class to include only washing machine models that share "the essential alleged common defect of crevices in the tub and/or bracket that promote mold growth." *Id.* at *14. By redefining the class, the Court "increase[d] commonality and predominance," while still leaving Plaintiffs "with the burden at trial of proving that 20 different Duet models, with at least two different tub designs, two different bracket designs, and a variety of optional self-cleaning cycles, share a common defect." *Id.*

Whirlpool's second argument is that, given the variety of Duet washing machine designs—including later models with "smooth-inside" plastic tubs and crevice-free brackets—Plaintiffs "cannot prove that *all* Washer models are negligently designed and *none* of Whirlpool's design changes fixed the alleged defects." Motion at 13 (docket no. 308–1) (emphasis added). But the Court's redefinition of the class eviscerates this argument. In other words, by redefining the class to increase commonality and predominance, the Court has enabled a jury to resolve "in one stroke" the question of whether there exists a universal design defect across all washing machine models. *Whirlpool II,*

722 F.3d at 852 (quoting *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). There are no Duet models within the class that Plaintiffs admit are not defective. Thus, Plaintiffs' design defect claim succeeds or fails holistically for every Duet model in the class.

In sum, neither of the two arguments Whirlpool offers in support of summary judgment on Plaintiffs' claim for negligent design is persuasive. Accordingly, Whirlpool's Motion for Summary Judgment on that claim is denied.

## C. Claim for Breach of Warranty.

In Count II of their Complaint, Plaintiffs allege Whirlpool "impliedly warranted that its Washing Machines were of good and merchantable quality—fit and safe for their ordinary intended use"—and Whirlpool breached this implied warranty because the mold problems "render Whirlpool's Washing Machines unfit for their intended purpose (that of producing a clean and clean-smelling wash), and not of merchantable quality." Complaint at ¶¶ 131, 133. During its second examination of this Court's *Class–Cert. Order,* the Sixth Circuit Court of Appeals defined the necessary elements of a "claim for tortious breach of warranty (also known in Ohio as strict liability or breach of implied warranty) ... [as follows:] (1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the defendant's hands; and (3) the defect directly and proximately caused the plaintiff's injury or loss." *Whirlpool II,* 722 F.3d at 853.

Whirlpool argues it is entitled to summary judgment on Plaintiffs' claim for breach of implied warranty for three reasons: (1) as it argued regarding Plaintiffs' design defect claim, Ohio law "limits tortious breach of warranty claims to alleged

*safety* defects," Motion at 19 (docket no. 308–1) (emphasis added); (2) Plaintiffs "cannot prove the Washers are unfit for ordinary use" because the machines perform comparably to other "goods of the kind," meaning other front-load washing machines, *id.* at 20; and (3) because Whirlpool "issued express written warranties" to the Plaintiffs, their implied warranty claim is barred, *id.* at 23. The Court concludes none of these arguments is well-taken.

■■■ Whirlpool's first argument fails because Ohio law does not restrict a warranty-in-tort claim to only safety flaws. For example, in *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 661 N.E.2d 714 (Ohio 1996), the plaintiffs hired a contractor to install a new concrete driveway. Plaintiffs specifically asked that the driveway color be solid brown but received, "instead, chocolate chip." *Id.* at 715 (court syllabus). After plaintiffs sued the defendant for "breaching an implied warranty of workmanlike quality," the trial court granted summary judgment in defendant's favor, holding "that an implied warranty of fitness does not apply to color." *Id.* The Ohio Supreme Court reversed, ruling that "the [plaintiffs] may pursue a claim of breach of implied warranty against [defendant]." *Id.* at 716. Of course, the flaw at issue in *LaPuma* had nothing to do with safety. And, as noted earlier, the Sixth Circuit Court of Appeals wrote in this case that "[t]he claims for tortious breach of warranty and negligent design rise or fall on whether a design defect proximately *causes mold or mildew to develop* in the Duets." *Whirlpool II*, 722 F.3d at 856, 853 (emphasis added). Again, this shows the Sixth Circuit understood a claim under Ohio law for tortious breach of implied warranty need not allege a risk of *personal* injury or a defect related to *safety*. As with

the negligent design claim, this conclusion is the law of the case.

■■■ Whirlpool's second argument is that Plaintiffs cannot prove the Duet washing machines at issue are unfit for their ordinary intended use. There are two aspects to this argument, neither of which has merit. The first aspect relates to the definition of "intended use." Whirlpool argues that, because many plaintiffs, including named Plaintiff Allison, used their Duet washing machine for years, this shows as a matter of undisputed fact that the Duets were fit for their ordinary intended use—that is, the Duets operated properly and worked to clean laundry. But Plaintiffs (including Allison) have mustered substantial evidence that they continued to use their Duets even though the machines did *not* produce clean-smelling clothes. Just as the Ohio Supreme Court allowed the LaPumas to pursue a claim for breach of implied warranty because their driveway was not the right color (even though the driveway otherwise operated properly, allowing passage of cars), Plaintiffs can pursue a claim for breach of implied warranty because their Duets gave off a moldy odor (even though the Duets otherwise operated properly, running through the chosen laundry cycle).[7]

■■■ The second aspect of Whirlpool's second argument relates to the definition of "unfit." Whirlpool observes that an implied warranty of merchantability is breached only when goods "are not of an acceptable quality when compared to that generally acceptable in the trade *for goods of the kind*." *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 424 (6th Cir.1981) (emphasis added). Whirlpool asserts that: (1) in this case, "goods of the kind" are only front-loading washing ma-

---

7. In any event, the question of whether the Duets operated as consumers expected to yield laundry that looked, felt, *and smelled* clean is an issue of disputed fact.

chines, not top-loading washing machines; and (2) *all* front-loading washing machines have odor problems, so the Duets cannot be called "unfit." *See* Motion at 21 (docket no. 308–1) ("Plaintiffs cannot identify any manufacturer that sold a front-loading washer in the U.S. that was maintenance-free and did not allow excessive biofilm growth or noticeable odors."). This argument fails both because: (1) "goods of the kind" include top-loading washing machines; [8] and (2) front-loading washing machines exist that Plaintiffs agree do not have mold problems—the newer ACCESS models of the Duet.

 Finally, Whirlpool insists that, having issued express written warranties to the Plaintiffs, it cannot be found liable for breach of an implied warranty. This argument fails because Whirlpool is not in privity with any Plaintiff. The Ohio Supreme Court has explained that, "where the buyer and seller are in privity of contract, and they have negotiated that contract from relatively equal bargaining positions, the parties are able to allocate the risk of all loss, including loss of the subject product itself, between themselves. Therefore, any protection against the product's self-inflicted damage . . . is better viewed as arising under the contract and not under the law of negligence." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624, 631 (1989); *see id.* at 634 ("where privity of contract existed the the-

ory of implied warranty was unnecessary"). In contrast, "[f]or an ordinary consumer, i.e., one not in privity of contract with the seller or manufacturer against whom recovery is sought, an action in negligence may be an appropriate remedy to protect the consumer's property interests." *Id.* at 631. Stated another way, implied warranty in tort applies when "the parties are not free to determine by contract the quality of goods which the seller is bound to deliver or the remedies available to the buyer in the event that the goods do not measure up to the agreed quality." *Id.* at 638. *See also Ressallat v. Burglar & Fire Alarms, Inc.*, 79 Ohio App.3d 43, 606 N.E.2d 1001, 1006 (1992) ("Although courts generally uphold disclaimers of implied warranties between parties who have equal bargaining power, they are reluctant to afford validity to such disclaimers when a purchaser is simply a consumer, rather than a commercial entity.").

In this case, Plaintiffs are "ordinary consumers" who have no privity of contract with Whirlpool. Accordingly, Whirlpool's extension to Plaintiffs of an express warranty does not prevent Plaintiffs from pursuing a claim for breach of an implied warranty that the Duets were of good and merchantable quality, fit for their ordinary intended use.

In sum, none of the arguments Whirlpool offers in support of summary judg-

---

**8.** Whirlpool asserts that "courts take a strict view of what constitutes comparable 'goods of the kind,'" citing *Schweinfurth v. Motorola, Inc.*, 2007 WL 6025288 (N.D.Ohio Dec. 3, 2007) and *Brown v. CincyAutos, Inc.*, 2009 WL 2913936 (S.D.Ohio Sept. 8, 2009). Reply brief at 14–15 (docket no. 349). In *Schweinfurth*, however, the court *rejected* the defendant's contention that "comparable goods of the kind" were limited to other cell-phones plaintiffs had used, and instead adopted a *broader* definition of *all* cell-phones of compa-

rable quality. *Schweinfurth*, 2007 WL 6025288 at *2. In *Brown*, the court used a similarly broad definition, stating that "comparable goods" relevant to plaintiff's Jeep meant "similar cars with similar miles on them." *Brown*, 2009 WL 2913936 at *5. Just as the *Brown* court did not construe "comparable goods" to mean only Jeeps or only SUVs or only cars with four-wheel drive, comparable goods in this case does not mean only washing machines that are front-loaders or are marketed as high-efficiency.

ment on Plaintiffs' claim for breach of implied warranty is persuasive. Accordingly, Whirlpool's Motion for Summary Judgment on that claim is denied.

### D. Claim for Failure to Warn.

 In Count III of their Complaint, Plaintiffs allege Whirlpool "had a pre-sale duty to warn potential purchasers that the Washing Machines carried with them greater risks of foul orders [sic odors] and health hazards than an ordinary consumer would expect when using the Machines in their intended or reasonably-foreseeable manner." Complaint at ¶ 141. In *Whirlpool II*, the Sixth Circuit Court of Appeals defined the necessary elements of a claim for failure to warn: "To prove a claim of negligent failure to warn, the plaintiffs must establish: (1) the manufacturer had a duty to warn; (2) the duty was breached; and (3) the plaintiff's injury proximately resulted from the breach of duty." *Whirlpool II*, 722 F.3d at 853 (citing *Hanlon v. Lane*, 98 Ohio App.3d 148, 648 N.E.2d 26, 28 (1994)). The appellate court added that "plaintiffs must show 'that in the exercise of ordinary care, the manufacturer knew or should have known of the risk or hazard about which it failed to warn' and 'that the manufacturer failed to take the precautions that a reasonable person would have taken in presenting the product to the public.'" *Id.* (quoting *Doane v. Givaudan Flavors Corp.*, 184 Ohio App.3d 26, 919 N.E.2d 290, 296 (2009)).

Whirlpool argues it is entitled to summary judgment on Plaintiffs' claim for failure to warn for two reasons: (1) under Ohio law, "a manufacturer has no duty to warn of a product that is not *dangerous*" and "Plaintiffs have no evidence that the Washers are *dangerous*, that the alleged defects caused illness or *personal injury* to any person, or that any omitted warning would have made the Washers *safe* for

use," Motion at 17 (docket no. 308–1) (emphasis added); and (2) Ohio law "does not require manufacturers to disclose user instructions or safety warnings before *sale;*" rather, any warnings about possible mold accumulation owed to purchasers must be provided "before they *used* their Washers," and Whirlpool "satisfied that supposed duty" by providing purchasers with Use and Care Guides, *id.* at 18–19 (italicized emphasis added, underlined emphasis in original).

 The Court concludes Whirlpool's first argument—that a failure-to-warn claim is cognizable in Ohio only if the allegedly inadequate warning addresses a *safety* defect—is persuasive. The Ohio Supreme Court has observed that "the standard imposed upon a manufacturer in a negligence claim grounded upon an inadequate warning is the same as that imposed in a strict liability claim based upon inadequate warning," and both "impose liability on a manufacturer for the failure to warn foreseeable users of *a product's hazardous or unreasonably dangerous condition.*" *Freas v. Prater Constr. Corp.*, 60 Ohio St.3d 6, 573 N.E.2d 27, 30 n. 1 (1991) (citing *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 556 N.E.2d 1177, 1182–83 (1990)). Ohio cases, including recent ones, repeat over and over the observation that, "[i]n Ohio, the case law has established that a manufacturer or vendor is negligent when he has knowledge of a latent defect *rendering a product unsafe* and fails to provide a warning of such defect." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267, 273 (1977) (emphasis added); *see also Broyles v. Kasper Mach. Co.*, 517 Fed.Appx. 345, 349 (6th Cir.2013) (a "warning must 'disclose[ ] all inherent risks' and make the product safe when used as directed") (quoting *Boyd v. Lincoln Elec. Co.*, 179 Ohio App.3d 559, 902 N.E.2d 1023, 1030 (2008)). This case law

shows the legal requirements for Plaintiffs' failure-to-warn claim are different from Plaintiffs' other tort claims—a safety defect is required.

Plaintiffs respond that "the fact that cases arising in the personal injury context use safety-related language when discussing [a failure-to-warn] claim is both unsurprising and irrelevant." Response at 11 (docket no. 329). That is, Plaintiffs contend the ubiquity of discussion of *safety* defects in failure-to-warn cases stems only from the fact that the plaintiffs in those cases usually suffered personal injury. Plaintiffs assert these discussions of danger and safety "do[ ] not make it a 'requirement' of the claim," and go so far as to assert "Ohio courts routinely uphold failure-to-warn claims in cases involving no safety defect." *Id.* The only two cases Plaintiffs cite for this proposition, however, do not support it.

In *Lawyers Coop. Publ'g Co. v. Muething*,[9] a lawyer "purchased a set of legal form books from Lawyers Cooperative Publishing Company" and used the forms to "prepare a set of promissory notes." *Muething*, 603 N.E.2d at 970. The Ohio Division of Securities later informed the lawyer that the notes he drafted violated Ohio law; the lawyer "was eventually indicted by the State of Ohio for various securities law violations." *Id.* After the publisher sued the lawyer for amounts still owed for purchase of the books, the lawyer brought counterclaims against the publisher for negligence, failure to warn and breach of warranty. *Muething*, 1991 WL 188129 at *2.

The publisher moved for summary judgment on all three counterclaims on statute of limitations grounds and the trial court granted the motion. The court of appeals reversed, concluding the proper limitations period for all three claims was four years, not two. *Id.* The Ohio Supreme Court reversed, directing that "the decision of the trial court granting summary judgment to [the publisher be] reinstated." *Muething*, 603 N.E.2d at 975. Plaintiffs suggest that, between the time the Ohio appellate court and the Ohio Supreme Court ruled, the lawyer in *Muething* had a viable claim for failure to warn that was not premised on any safety defect. But this reads far too much into the *Muething* appellate court's opinion, which addressed *only* the statute of limitations issue.[10] Neither the Ohio Court of Appeals nor Ohio Supreme Court even touched upon the question of whether a failure-to-warn claim can proceed absent allegation of a safety defect.

Plaintiffs' other case, *Doe v. SexSearch*, 502 F.Supp.2d 719 (N.D.Ohio 2007), also does not support Plaintiffs' position. In *SexSearch*, plaintiff met a young woman through an adult online dating service and had consensual sexual relations with her. After it turned out the woman was a minor, plaintiff was arrested for felonious sexual conduct. Plaintiff then sued the dating service, bringing fourteen different claims, including the claim that "[d]efendants failed to warn that minors may be members of the website." *Id.* at 723. The court (Judge Zouhary) dismissed the complaint in its entirety for failure to state a claim upon which relief may be granted.

---

**9.** *Lawyer's Coop. Publ'g Co. v. Muething*, 1991 WL 188129 (Ohio Ct.App. Sept. 25, 1991), *reversed*, 65 Ohio St.3d 273, 603 N.E.2d 969, 972 (1992).

**10.** This Court was unable to determine whether the publisher's motion for summary judg-

ment in *Muething* also raised the argument that the lawyer's failure-to-warn claim failed as a matter of law because it did not point to any *safety* defect in the publisher's form books.

Regarding the failure-to-warn claim, the court held that "Defendants had no duty to warn Plaintiff that an anonymous internet poster might post false content, as internet anonymity is an open and obvious danger." *Id.* at 737. The court further noted that, "even if Defendants had a duty to warn Plaintiff, they satisfied this duty by including a warning in the Terms and Conditions" that "We cannot guarantee, and assume no responsibility for verifying, the accuracy of the information provided by other users of the Service." *Id.* Plaintiffs apparently believe *SexSearch* supports their position because the "danger" that was "open and obvious" in that case did not involve a *safety* defect, and the warning given by the online dating service did not address the risk of any *physical harm.* These points are arguable—after all, the plaintiff was charged with criminally unsafe conduct and "face[d] fifteen (15) years in prison," *id.* at 722—but even accepting these points, it is an extreme stretch to hold that *dismissal* of the failure-to-warn claim in *SexSearch* means Plaintiffs' failure-to-warn claim in this case is viable. To the contrary, like *Muething, SexSearch* contains no affirmative suggestion that Ohio law recognizes "failure-to-warn claims in cases involving no safety defect." Response at 11 (docket no. 329).

The Court also notes that, in States that *do* recognize such claims, there are cases that say so. In Florida, for example, the Unfair and Deceptive Trade Practices Act ("FDUTPA") authorizes a claim "where the defendant knowingly fails to disclose a material defect that diminishes a product's value," and the claim is *"not ... limited"* to "a defect presenting safety concerns." *Matthews v. Am. Honda Motor Co.,* 2012 WL 2520675 at *3 (S.D.Fla. June 6, 2012) (emphasis added); *see also Davis v. Pow-*

*ertel, Inc.,* 776 So.2d 971, 973 (Fla.Dist.Ct. App.2000) (reversing dismissal of a class action FDUTPA claim based on the defendant's alleged "practice of selling name brand cellular telephones to its subscribers without informing them that the phones had been programmed to work only with [the defendant's] wireless communication service," thereby "reduc[ing] the value of the phone in each case").[11] In contrast, Plaintiffs draw highly tenuous negative implications from only two Ohio cases. The Court is not persuaded that Ohio law recognizes a failure-to-warn claim if the allegedly inadequate warning addresses a non-safety defect.

The Court also notes the Sixth Circuit Court of Appeals did not hold otherwise. In *Whirlpool II,* the court quoted the holding from *Doane v. Givaudan Flavors Corp.:* "plaintiffs must show 'that in the exercise of ordinary care, the manufacturer knew or should have known of the risk or hazard about which it failed to warn' and 'that the manufacturer failed to take the precautions that a reasonable person would have taken in presenting the product to the public.'" *Whirlpool II,* 722 F.3d at 853 (quoting *Doane,* 919 N.E.2d 290, 296 (2009)). The claim in *Doane* involved allegedly insufficient warnings that diacetyl caused lung disease—clearly a safety hazard involving physical injury. The *Whirlpool II* court then observed that "[s]uccess on the negligent failure-to-warn claim depends on whether Whirlpool had a duty to warn consumers about the propensity for mold growth in Duets and breached that duty." *Whirlpool II,* 722 F.3d at 853. This observation proved true: Whirlpool does not have any such duty under Ohio law (because propensity for mold

---

11. The Court also observes that the failure-to-warn claims that Florida recognizes, even though they do not involve safety defects, are creatures of statute, not common law.

growth is not a safety defect), so the failure-to-warn claim does not succeed.[12]

In sum, the Ohio class of Plaintiffs have a claim against Whirlpool for design defect and also a claim for breach of implied warranty. But they do not have a viable claim under Ohio law for failure to warn. Accordingly, Whirlpool's Motion for Summary Judgment on the failure-to-warn claim is granted.

### E. The Ohio Products Liability Act ("OPLA").

 In addition to the claim-specific challenges addressed above, Whirlpool also asserts two global defenses to all of Plaintiffs' tort claims. Whirlpool's first global defense is that all of the "common law product liability claims were abrogated by [the OPLA] and should be dismissed." Motion at 26 (docket no. 308–1). Whirlpool admits, however, that this argument is tenuous: "most courts have allowed *common-law* product liability claims seeking purely economic loss to proceed because such claims do not fit within OPLA's definition of a *statutory* product liability claim." *Id.* (emphasis in original).

Indeed, Whirlpool's reference to "most courts" includes this Court: in *Hoffer v. Cooper Wiring Devices,* 2007 WL 1725317 (N.D.Ohio June 13, 2007) (Boyko, J.), where the plaintiff brought common law claims for "breach of implied warranty in tort [and] negligence (defective design and

failure to warn)," the Court held that, "to the extent Plaintiff seeks damages for economic loss, his claims do not fall under the purview of the OPLA." *Id.* at *1, *2. That description applies precisely to this case.

Further, the Sixth Circuit said the same thing about Plaintiffs' claims when it held that "Ohio law permits ordinary consumers who are not in privity of contract with product manufacturers to bring [common-law] claims such as negligent design and negligent failure-to-warn in order to recover damages for economic injury only." *Whirlpool II,* 722 F.3d at 856; *see also In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.,* 684 F.Supp.2d 942, 950 (N.D.Ohio Nov. 3, 2009) (Gwin, J.) (refusing to dismiss Plaintiffs' claims for negligent design and failure to warn based on "the Supreme Court of Ohio's rather plain holdings that a plaintiff may pursue common-law claims for negligent design and failure to warn even though he has suffered only economic damages").

Thus, even if this Court agreed with Whirlpool (which it does not) that these "other courts" are "incorrect" in their interpretation of the OPLA, Motion at 26 n. 11 (docket no. 308–1), the Court would be constrained by the doctrine of law of the case to allow Plaintiffs' common law tort claims for negligent design and breach of implied warranty to proceed.

The Court understands Whirlpool may be asserting this argument to preserve it

---

12. The Sixth Circuit Court of Appeals did state that "[e]vidence will either prove or disprove as to all class members ... whether Whirlpool failed to warn consumers adequately of the propensity for mold growth in the Duets." *Whirlpool II,* 722 F.3d at 859. But this presupposed, without so holding, that Whirlpool had such a duty under Ohio law.

The Court recognizes it is drawing fine distinctions regarding the "safety flaw requirement" as it applies to Plaintiffs' three different tort claims. *LaPuma* makes absolutely

clear that a claim for breach of implied warranty does *not* require allegation of a safety flaw. *In re Porsche* and the cases it cites merely suggest, but do not state explicitly, that a claim for design defect does *not* require allegation of a safety flaw. In contrast, there is no Ohio case suggesting a claim for failure to warn does *not* require allegation of a safety flaw; all Ohio cases suggest the opposite. Ultimately, the Court concludes these distinctions make sense in the context of this case.

for appeal, but it is clear the argument does not prevail under the current state of Ohio law.

### F. Statute of Limitations.

Whirlpool's second global defense is that the tort claims of "all class members who first experienced mold problems before June 2, 2006" are barred by the applicable statute of limitations. Specifically, Whirlpool argues that: (1) the statute of limitations applicable to all of Plaintiffs' tort claims is Ohio Rev.Code § 2305.10, which sets out a two-year restriction; (2) the Complaint in this case was filed on June 2, 2008; and (3) therefore, any class member who learned his or her Duet suffered mold problems before June 2, 2006, cannot succeed on any of the stated tort claims as a matter of law. This would include named Plaintiff Allison, who purchased her Duet washer on October 13, 2005 and "within the first six months ... noticed there was definitely a [mold] problem." Motion at 24 (docket no. 308–1) (quoting Allison Dep. I at 30).

Plaintiffs respond that: (1) the correct statute of limitations period is four years, not two; and (2) the limitations period was tolled by the discovery rule and/or Whirlpool's fraudulent concealment. The Court examines these assertions below.

### 1. The Applicable Statute of Limitations.

Whirlpool asserts all of Plaintiffs' tort claims are subject to Ohio Rev.Code § 2305.10(A), which provides in pertinent part: "an action based on a product liability claim and an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues. * * * [A] cause of action accrues under this division when the injury or loss to person or property occurs." Plaintiffs respond that their tort claims are

not for "bodily injury or injuring personal property;" rather, they are for purely economic loss. Thus, Plaintiffs assert the correct statute of limitations is Ohio Rev.Code § 2305.09(D), which provides a four-year limitations period for "an injury to the rights of the plaintiff not arising on contract nor enumerated in [§ 2305.10]."

■■■ The Court concludes Whirlpool is correct. In *U.S. Fid. & Guar. Co. v. Truck & Concrete Equip. Co.,* 21 Ohio St.2d 244, 257 N.E.2d 380 (1970), the Ohio Supreme Court held:

> An action in tort for damage to personal property, which is based upon the breach of a duty assumed by the manufacturer-seller of a product by reason of the manufacturer's implicit representation of good and merchantable quality and fitness for the intended use when he sells the product, is limited as to the time in which it shall be brought by the provisions of Section 2305.10, Revised Code, which provides that "An action for * * * injuring personal property shall be brought within two years after the cause thereof arose."

*Id.* at syllabus ¶ 2. Courts have relied upon *Truck & Concrete* to hold that "damage to personal property" includes "economic loss," so that "implied warranty in tort claims are subject to a two-year statute of limitations." *In re Porsche Cars N. Am., Inc.,* 880 F.Supp.2d 801, 866 (S.D.Ohio 2012) (citing *Truck & Concrete* and Ohio Rev.Code § 2305.10(A)). *See also Chemtrol,* 537 N.E.2d at 629 (" 'Property damage' generally connotes either damage *to the defective product itself* or damage to other property.") (emphasis added).

Plaintiffs cite other cases for the proposition that, because they seek to recover only economic loss, they are not pursuing "tort[s] for damage to personal property." Ohio Rev.Code § 2305.10(A). But none of

the cases Plaintiffs cite support their position. The Court in *Doty v. Fellhauer Elec., Inc.,* 175 Ohio App.3d 681, 888 N.E.2d 1138 (2008), applied the four-year limitations period to plaintiff's breach of implied warranty claim because "it relates to damages to *real property.*" *Id.* at 1143 (emphasis added). The court in *Sun Refining & Mktg. Co. v. Crosby Valve and Gage Co.,* 68 Ohio St.3d 397, 627 N.E.2d 552 (1994), examined the question of which limitations period applied "[w]hen a *sophisticated commercial buyer* sues for property damage caused by an allegedly defective product" and makes "claims relating to property *other than the defective product itself.*" *Id.* at 554 (emphasis added). *Doty* and *Sun Refining* say nothing explicitly or by implication that applies to the circumstances in this case, involving ordinary consumers seeking damages for direct economic loss. The same is ultimately true of *Lawyers Coop. Publ'g Co. v. Muething,* 1991 WL 188129 (Ohio Ct.App. Sept. 25, 1991). Plaintiffs note that the *Muething* appellate court applied the four-year limitations period set out in § 2305.09(D) to the plaintiff's claims for negligence and failure to warn, noting the plaintiff sought recovery only for economic loss and not for "bodily injury or injury to his personal property." *See id.* at *2. But the Ohio Supreme Court subsequently reversed and noted that the plaintiff was actually "seeking far more than economic damages." *Lawyers Coop. Publ'g Co. v. Muething,* 65 Ohio St.3d 273, 603 N.E.2d 969, 972 (1992). Further, the *Muething* court concluded that "an action based on breach of an implied warranty without privity of contract is subject to R.C. 2305.10, the two-year statute of limita-

tions," which supports Whirlpool's position.[13]

Ultimately, Plaintiffs' tort claims are "based on ... product liability" and Plaintiffs seek damages for "injur[y to] personal property." Ohio Rev.Code § 2305.10. Accordingly, the two-year limitations period of § 2305.10 applies.

## 2. Tolling.

As noted, the Complaint in this case was filed on June 2, 2008. Therefore, unless there is some exception, application of the two-year statute of limitations set out in Ohio Rev.Code § 2305.10 would entitle Whirlpool to summary judgment on the tort claims of any class member who learned his or her Duet suffered mold problems before June 2, 2006.

Plaintiffs claim there are two such exceptions. First, the "discovery rule" delayed accrual of their claims until they "knew or should have reasonably known that the mold problem was caused by an inherent defect." Response at 22 n. 20 (docket no. 329). Second, Plaintiffs assert Whirlpool's fraudulent concealment of the design defects tolled the statute of limitations. *Id.* at 22–24.

Whirlpool responds that neither exception exists as a matter of law, and even if the exceptions do exist, the undisputed facts reveal that Plaintiffs are unable to show either doctrine applies. The Court concludes Whirlpool's arguments fail.

Generally, the discovery rule holds "that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim." *A.S. v.*

---

**13.** Plaintiffs characterize the Ohio Supreme Court's *Muething* opinion as a "reversal on other grounds." This is not inaccurate, but that is because neither the *Muething* appellate court nor the Supreme Court addressed on all

fours the precise question presented in this case: which statute of limitations applies when an *unsophisticated* plaintiff with *no* privity of contract sues a defendant only for *direct* economic loss under tort theories.

*Fairfield Sch. Dist.*, 2003 WL 22764383 at *3 n. 1 (Ohio Ct.App. Nov. 24, 2003) (quoting Black's Law Dictionary 478 (7th ed.1999)). Whirlpool asserts that the absence of an explicit "discovery rule" in the text of § 2305.10(A) itself precludes application of the rule to Plaintiffs' claims. But this assertion is inconsistent with Ohio case law. Ohio courts have applied the discovery rule to actions regulated by § 2305.10, including claims for damage to personal property. *See, e.g., Kay v. City of Cleveland,* 2003 WL 125280 at *4 (Ohio Ct.App. Jan. 16, 2003) ("Under *Norgard [v. Brush Wellman, Inc.,* 95 Ohio St.3d 165, 766 N.E.2d 977 (Ohio 2002) ], the statute of limitations set forth in R.C. 2305.10 starts to run when the damaged party discovers, or in the exercise of reasonable diligence should have discovered, that he was injured by the wrongful conduct of another. The discovery rule expanded by *Norgard* applies to R.C. 2305.10, which covers injury to personal property.").

Similarly, Whirlpool argues Ohio law does not recognize fraudulent concealment as a basis for tolling the statute of limitations. In support of its position, Whirlpool cites *Sentle Trucking Corp. v. General Motors Corp.,* 1986 WL 7626 (Ohio Ct.App. July 11, 1986), a 28–year–old case which states, "we can find no authority to permit an interpretation which would allow this court to recognize intentional concealment as a means by which the statute of limitations is estopped." *Id.* at *7 n. 11. More recent cases, however, recognize the fraudulent concealment doctrine under Ohio law. *See Thornton v. State Farm Mut. Auto Ins. Co.,* 2006 WL 3359448 (N.D.Ohio Nov. 17, 2006) ("Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations. One such circumstance is fraudulent concealment."); *Perkins v. Falke & Dunphy, LLC,* 2012 WL 6097104 at *3 (Ohio Ct.App. Dec. 7, 2012) ("fraudulent concealment may serve

as a ground for equitable tolling ... in compelling cases which justify a departure from established procedure") (internal quotations omitted).

Whirlpool also argues that, even if Ohio law recognizes the discovery rule and/or fraudulent concealment to toll the statute of limitations, Plaintiffs "cannot meet the high burden of the tolling doctrine." Reply at 21 (docket no. 349). Fraudulent concealment, for example, "is only available in compelling cases" and the "plaintiff must show that the defendant engaged in a course of conduct to conceal evidence of the defendant's wrongdoing, and that the plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim." *Perkins v. Falke & Dunphy, L.L.C.,* 2012 WL 6097104 at *3 (Ohio Ct.App. Dec. 7, 2012). Whirlpool insists the evidence adduced by Plaintiffs to support fraudulent concealment is insufficient as a matter of law.

■ Although Plaintiffs' burden to show fraudulent concealment is high, the Court concludes Plaintiffs have identified material facts that put the issue into genuine dispute. Plaintiffs point to evidence that Whirlpool knew before it sold the Duets that they were prone to mold problems, and also knew that the corrective instructions it gave to purchasers who complained would yield only impermanent and ineffective resolution. *See* Response at 23–26 (docket no. 329). Allison adduces evidence that Whirlpool offered numerous explanations and excuses for the recurring mold problem in her Duet other than the design of the machine itself. A reasonable jury could find Whirlpool fraudulently concealed design defects by telling consumers the mold problem was caused by something else (including their own actions), or could find that Duet purchasers could not reasonably have discovered the mold was

caused by design defects in the Duets. Accordingly, the Court overrules Whirlpool's second global defense that all of Plaintiffs' tort claims fail as a matter of law and undisputed fact, based on the statute of limitations.

### 3. "Noticeable Mold Problems"

Finally, Whirlpool offers an argument related to the question of when a class-member's claims accrue. On one end of the scale, Whirlpool asserts class-member-and-named-plaintiff Allison's claims accrued when she first noticed a moldy odor and the two-year limitations period began at that time, without cease. As discussed above, the Court rejects this assertion because there are issues of disputed fact regarding application of the discovery rule and fraudulent concealment. On the other end of the scale, Whirlpool argues that the Court "should dismiss the claims of any class member who has not experienced any noticeable mold problems." Reply at 23 (docket no. 349). Whirlpool argues that Duet owners who have *never* noticed any moldy odor have not accrued *any* claim, because they "have suffered no injury under Ohio law." *Id.* at 25. But the Sixth Circuit Court of Appeals has already spoken to this argument and overruled it: "Because *all* Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class." *Whirlpool II,* 722 F.3d at 857 (emphasis in original). Further, the questions of whether "most class members have … experienced a mold problem" and whether they suffered direct economic loss damages are clearly ones of disputed fact. *Id.* Whirlpool is simply incorrect when it asserts Plaintiffs have no "evidence … of classwide injury." Reply at 23 (docket no. 349).

Accordingly, the Court rejects Whirlpool's argument that it should dismiss the claims of any class member who has not experienced any noticeable mold problems, as a matter of law.

## V. Analysis—Plaintiffs' Motion.

Whirlpool's motion raised numerous grounds for entry of summary judgment in its favor, nearly all of which grounds are purely *legal*—for example, the ground that Ohio law simply does not recognize a claim for design defect when the alleged defect is not a safety flaw. In contrast, the overriding theme of Plaintiffs' Motion for Summary Judgment is *factual*—Plaintiffs insist they have "marshaled overwhelming and largely uncontroverted evidence" that the Duets are defective, to the extent that "no reasonable jury could find for Whirlpool" on Plaintiffs' claims. Motion at 1 (docket no. 309).

It is certainly true that Plaintiffs have colorable claims, and Plaintiffs' presentation of their evidence in their Motion is ardent and robust. But Plaintiffs have a very high burden when seeking to secure judgment as a matter of law and undisputed fact on their own claims: "summary judgment … is proper only if the evidence is such that *every* reasonable juror would conclude that the [Plaintiffs] have met their burden." *Cockrel v. Shelby Cnty. Sch. Dist.,* 270 F.3d 1036, 1057 (6th Cir.2001) (emphasis in original); *see Surles v. Andison,* 678 F.3d 452, 455–56 (6th Cir. 2012) (summary judgment in favor of the party who bears the burden of persuasion may be granted only if "the evidence is so powerful that no reasonable jury would be free to disbelieve it") (quoting 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1] at 56–138 (3rd ed.2000)).

When "reviewing a motion for summary judgment, [the Court] must view the evi-

724

dence and draw all reasonable inferences in the light most favorable to the nonmoving party." *Cockrel,* 270 F.3d at 1056 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In this case, viewing all of the evidence in the light most favorable to Whirlpool, the Court cannot say that every reasonable juror could only determine that Plaintiffs prevail on their claims. Given this conclusion, no further analysis of Plaintiffs' Motion is necessary.[14] A jury will render a judgment that will reveal whether Plaintiffs' view of the evidence is correct.

**IT IS SO ORDERED.**

## In re WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION.

14. Whirlpool moved to strike the document attached as exhibit 14 to Plaintiffs' Motion for Summary Judgment, arguing Plaintiffs mischaracterized the document, it does not show anything about Whirlpool's knowledge of a design defect, and it is not relevant. Given that the Court denies Plaintiffs' summary judgment motion, Whirlpool's Motion to Strike is denied as moot.